1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  DORIAN JUNG
   Deputy Attorney General
6  State Bar No. 200116
    455 Golden Gate Avenue, Suite 11000
7   San Francisco, CA 94102-7004
    Telephone: (415) 703-1342
8  Fax: (415) 703-1234
   Email: dorian.jung@doj.ca.gov
9  Attorneys for Respondent

10                 IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

**GREGORY WILLIAMS,**                          C 07-04269 TEH

14
                                  Petitioner,
15
        v.
16
**ROBERT HOREL, Warden,**
17
                                  Respondent.
18

19

20   **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO
         PETITION FOR WRIT OF HABEAS CORPUS**

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

STATEMENT OF THE CASE .......................................... 1

STATEMENT OF FACTS .............................................. 2

STANDARD OF REVIEW ............................................. 3

ARGUMENT ......................................................... 5

**I.    THE STATE APPELLATE COURT DID NOT UNREASONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW BY REJECTING PETITIONER'S CLAIM OF *MIRANDA* ERROR** ...... 5

**II.   THE STATE APPELLATE COURT DID NOT UNREASONABLY DENY RELIEF ON PETITIONER'S CLAIM THAT THE POLICE INTERROGATION WAS COERCIVE** ............... 10

**III.  THE STATE APPELLATE COURT DID NOT UNREASONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW BY FINDING THAT SUFFICIENT EVIDENCE SUPPORTED PETITIONER'S CONVICTION** ..................... 13

**IV.   THE STATE APPELLATE COURT DID NOT UNREASONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW BY REJECTING VARIOUS EVIDENTIARY CLAIMS** ....... 16

**V.    THE STATE APPELLATE COURT DID NOT UNREASONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW BY REJECTING PETITIONER'S CLAIM OF PROSECUTORIAL MISCONDUCT** ........................ 18

CONCLUSION ....................................................... 22

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Bains v. Cambra*
204 F.3d 964 (9th Cir. 2000) — 5

*Brecht v. Abrahamson*
507 U.S. 619 (1993) — 5, 17, 21

*Brewer v. Williams*
430 U.S. 387 (1977) — 11

*Colorado v. Connelly*
479 U.S. 157 (1986) — 11

*Darden v. Wainwright*
477 U.S. 168 (1986) — 20

*Davis v. United States*
512 U.S. 452 (1994) — 8, 9

*Dowling v. United States*
493 U.S. 342 (1990) — 20

*Estelle v. McGuire*
502 U.S. 62 (1991) — 16

*Francis v. Franklin*
471 U.S. 307 (1985) — 17

*Fry v. Pliler*
127 S. Ct. 2321 (2007) — 5

*Garvin v. Farmon*
258 F.3d 951 (9th Cir. 2001) — 11

*Himes v. Thompson*
336 F.3d 848 (9th Cir. 2003) — 4

*Hutto v. Ross*
429 U.S. 28 (1976) — 10

*In re Anthony M.*
116 Cal.App.3d 491 (1981) — 15

*Jackson v. Denno*
378 U.S. 368 (1964) — 10

*Jackson v. Virginia*
443 U.S. 307 (1979) — 14

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

**TABLE OF AUTHORITIES** (continued)

Page

*Jammal v. Van de Kamp*
926 F.2d 918 (9th Cir. 1991) ........ 16

*Jeffries v. Blodgett*
5 F.3d 1180 (9th Cir. 1993) ........ 16, 20

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005) ........ 14

*Lego v. Twomey*
404 U.S. 477 (1972) ........ 11

*Lockyer v. Andrade*
538 U.S. 63 (2003) ........ 4

*Lynumn v. Illinois*
372 U.S. 528 (1963) ........ 10

*Martin v. Wainwright*
770 F.2d 918 (11th Cir. 1985) ........ 11

*McMillan v. Gomez*
19 F.3d 465 (9th Cir. 1994) ........ 14

*Menendez v. Terhune*
422 F.3d 1012 (9th Cir. 2005) ........ 20

*Miranda v. Arizona*
384 U.S. 436 (1966) ........ 5, 7, 8, 9, 11

*People v. Smith*
64 Cal.App.4th 1458 (1998) ........ 15

*Smith v. Phillips*
455 U.S 209 (1982) ........ 20

*Thompson v. Borg*
74 F.3d 1571 (9th Cir. 1996) ........ 20

*United States v. Alegria*
721 F.2d 758 (11th Cir. 1983) ........ 8

*United States v. George*
987 F.2d 1428 (9th Cir. 1993) ........ 12

*United States v. Kelley*
953 F.2d 562 (9th Cir. 1992) ........ 12

*United States v. Martin*
781 F.2d 671 (9th Cir. 1985) ........ 12

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

iii

## TABLE OF AUTHORITIES  (continued)

Page

*Whitaker v. Meachum*
123 F.3d 714 (2nd Cir. 1997)                                        11

*Williams v. Stewart*
441 F.3d 1030 (9th Cir. 2006)                                       16

*Williams v. Taylor*
529 U.S. 362 (2000)                                                 3, 4

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                  4

*Yarborough v. Alvarado*
541 U.S. 652 (2004)                                                 11

**Statutes**

United States Code, Title 28
    § 2254                                       2, 5
    § 2254(d)(1)                                 4
    § 2254(d)(2)                                 4
    § 2254(e)(1)                                 4

California Evidence Code
    § 402                                        7

California Health & Safety Code
    § 11550(a)                                   1

California Penal Code
    § 220                                        15
    § 459                                        1
    § 460(a)                                     1
    § 667(b)-(i)                                 2, 15, 17
    § 1170.12                                    2

**Other Authorities**

Antiterrorist and Effective Death Penalty Act of 1996 (AEDPA)      3, 4, 9, 11, 14, 15, 17, 21

California Jury Instructions, Criminal
    No. 1.02                                     21

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

iv

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
DORIAN JUNG
Deputy Attorney General
State Bar No. 200116
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-1342
  Fax: (415) 703-1234
  Email: dorian.jung@doj.ca.gov
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **GREGORY WILLIAMS,**<br><br>Petitioner,<br><br>v.<br><br>**ROBERT HOREL, Warden,**<br><br>Respondent. | C 07-04269 TEH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |

**STATEMENT OF THE CASE**

On February 20, 2004, the District Attorney of Santa Clara County filed an amended information against petitioner Gregory Hunter Williams, charging one count of first degree burglary, in violation of Cal. Penal Code §§ 459, 460(a), and one count of being under the influence of a controlled substance, a misdemeanor, in violation of Cal. Health & Safety Code § 11550(a). CT 72.[1]

---

1. "CT" denotes the Clerk's Transcript on Appeal, lodged with the answer as Exh. A. "RT" denotes the Reporter's Transcript of Trial Proceedings, lodged with the answer as Exh. B.

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

1

1   The information specially alleged that petitioner had suffered two prior strike convictions within the

2   meaning of Cal. Penal Code §§ 667(b)-(i), 1170.12. CT 72-73.

3          On March 15, 2004, a jury convicted petitioner on both counts. CT 305-09. On March

4   16, 2004, in a bifurcated proceeding, the court found both prior strike allegations to be true. CT 323.

5          On November 22, 2004, the trial court sentenced petitioner to state prison for the

6   indeterminate term of 25 years to life. CT 400-03. Petitioner appealed. CT 405. On June 29, 2006,

7   the California Court of Appeal affirmed petitioner's conviction. Exh. F.

8          On August 1, 2006, petitioner filed a petition for review. Exh. G. On October 11, 2006,

9   the California Supreme Court issued an order denying the petition. Exh. H.

10          On August 20, 2007, petitioner filed the instant petition pursuant to 28 U.S.C. § 2254.

11                              **STATEMENT OF FACTS**

12          Respondent takes the following statement of facts from the opinion of the California Court

13   of Appeal:

14      Appellant was charged with entering his neighbor's home with the intent to commit a
        sexual offense. Robert and Terry Bauer lived with their son and daughter in the Willow
15      Glen neighborhood of San Jose. Appellant lived next door with his mother and a friend.
        Between July and October 2002, Robert had a couple of brief conversations with
16      appellant. A few days before the offenses here, appellant "kind of cornered" Terry in her
        driveway and they had what she described as a "bizarre conversation." Terry testified that
17      appellant "gave [her] the creeps." During one conversation, Robert talked to appellant
        about the progress of the ongoing remodeling of the Bauer home and appellant seemed
18      jumpy. Terry joined them briefly and appellant said that he had worn out his welcome and
        left.

19
        Robert's brother, a contractor, was working on the house and left a radio on the roof for
20      the workers who were building the second story. Although part of first floor of the home
        was gutted, the family was living in a part that could be locked.
21
        Early one October morning in 2002, Terry heard footsteps overhead on the part of the
22      house that was under construction. She awakened Robert and he went to investigate.
        Robert heard the radio on the roof playing for less than a minute. He told Terry to call
23      911. He heard what sounded like someone running on and then jumping off the roof. The
        police arrived and searched for several minutes including in the crawl space under the
24      house. The police concluded that the intruder was no longer around. The officers left
        except for one who started to drive away and then stopped to talk to a neighbor across the
25      street. Robert went over to explain that that neighbor should not be considered a suspect.

26      Terry went to check on the children, who were sharing the son's room during the
        construction. As she walked to that bedroom, she saw someone coming through her
27      daughter's bedroom doorway into the hall. She ran to her son's room, placed a chair under
        the door handle, and had her daughter open the window and call for Robert. Robert and

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

2

1    the officer heard the girl's scream and rushed back into the house.  Terry told Robert it
was appellant.  Appellant, who was found in the master bedroom lying on the bed with his
2    hands behind his head, was taken into custody.

3    Four officers working in teams of two interviewed appellant and tapes and transcripts of
these interviews were admitted into evidence at trial.  San Jose Police Officer Richard
4    Bravo testified that when he interviewed appellant, he believed him to be under the
influence of methamphetamine, which can cause delusional thinking.  Methamphetamine
5    use can also cause "speech having to do with several topics in a rapid manner."  Appellant
seemed aware and lucid.  Bravo sought to interview appellant about his specific intent in
6    entering the house.  Bravo testified at trial that at the time of the interview he thought that
appellant was possibly there for the "purposes of a sexual offense" because there was "an
7    adult female and a juvenile female present," there was no sign that theft was the motive,
and appellant was a convicted sex offender.  Bravo testified that when he questioned
8    appellant, "I wasn't hoping that he would necessarily incriminate himself.  I was hoping
to build the best case possible."

9
During these interviews, appellant talked about God, the CIA, and a conspiracy to keep
10    him from having sex.  When first asked "Why did you go next door?" appellant answered,
"looking for girls."  He said he was attracted to Terry but when asked if he intended to
11    rape her he answered, "Hell, no."  He said that he had not been "sneaking around" but that
he had "tried to access several different points" of the house before pulling himself up to
12    the roof by a rafter.  He said that he wanted to peek at Terry and "touch her without
waking her up."  The officers asked him, "what were you thinking about that brought you
13    over there tonight though?" and his answer described his problems "getting laid."  The
officers asked about appellant's intentions toward the 10-year-old girl in the house,
14    appellant said, "You know what?  The way I see things, ah, eighteen is the limit.  If they're
under 18, you're not supposed to touch them.  Okay.  But that doesn't necessarily mean
15    that they're not old enough to have sex.  A sixteen year old girl, my wife's daughter, I
created a lot of fucking shit in our marriage, because I started to, ah, party with the kids
16    . . .  And we were too close together."  Discussing methamphetamine, appellant said,
"when I spin out on crank, I try to fuck anything . . . [I]t creates a problem with my
17    relationships."  Appellant told the officers that he was "loaded" on methamphetamine that
night and was "trying to have a marathon sport fuck."  He said, "I'm just out to have sex
18    with anybody that's willing."  In his second interview with the police, appellant told the
officers that he had entered the Bauer's home because he "needed" to get into the "sealed
19    chamber" that contained a "sex ring involving kids."  Appellant also made repeated
references to "pussy."  For example, when asked if he wanted something to eat, he
20    answered, "Pussy."  He explained that when he used methamphetamines, he would have
"a little bit of a problem" with "just sex in general" and "chasing pussy."  He said, "it's
21    a pussy thing" as distinguished from a "crank thing."  At one point appellant said, "I
wonder how many people are gonna be mad at me by the time this is all over."

22

23    Exh. F at 2-4.

24                          **STANDARD OF REVIEW**

25          Habeas corpus review in this case is governed by the provisions of the Antiterrorism and

26    Effective Death Penalty Act of 1996 (the AEDPA), by which "Congress placed a new restriction on

27    the power of the federal courts to grant writs of habeas corpus to state prisoners."  *Williams v.*

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v.*
*Horel* - C 07-04269 TEH

1    *Taylor*, 529 U.S. 362, 399 (2000). Chapter 153 of the AEDPA, which governs the present case,

2    prohibits relief on federal constitutional claims unless the state ruling "was contrary to, or involved

3    an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

4    of the United States," or "was based on an unreasonable determination of the facts in light of the

5    evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

6       "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

7    arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court

8    decides a case differently than this Court has on a set of materially indistinguishable facts. Under

9    the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court

10    identifies the correct governing legal principle from this Court's decisions but unreasonably applies

11    that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-13. The test is objective,

12    and an unreasonable application is not merely incorrect or erroneous. *Id.* at 410-11. A "federal

13    habeas court may not issue the writ simply because that court concludes in its independent judgment

14    that the relevant state-court decision applied clearly established federal law erroneously or

15    incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

16       "It is not enough that a federal habeas court, in its independent review of the legal question

17    is left with a firm conviction that the state court was 'erroneous.'" *Lockyer v. Andrade*, 538 U.S. 63,

18    75 (2003) (internal citation and edits omitted). Even a showing of "clear error" falls short of the

19    established standard of objective unreasonability. *Id.* at 75. Where the state court denies relief

20    without a reasoned opinion, the federal habeas court does not review the claim de novo, but does

21    "perform an 'independent review of the record' to ascertain whether the state court decision was

22    objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Also, state court

23    factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28

24    U.S.C. § 2254(e)(1). The petitioner bears the burden of showing that the state court's decision was

25    unreasonable. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

26       Even if the state court's ruling is contrary to or an unreasonable application of Supreme

27    Court precedent, that error justifies overturning the conviction only if the error had a "substantial and

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

1  injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619,

2  637 (1993). The *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless error

3  review conducted by the state courts. *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007).

**ARGUMENT**

**I.**

**THE STATE APPELLATE COURT DID NOT UNREASONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW BY REJECTING PETITIONER'S CLAIM OF *MIRANDA* ERROR**

8      Petitioner contends that the state appellate court unreasonably denied relief on his claim

9  that officers unlawfully questioned him after he invoked his rights pursuant to *Miranda v. Arizona*,

10  384 U.S. 436 (1966). Petn. at 2. This claim is meritless.

11      Shortly after 6:30 a.m. on the date of the charged offense, Officer Richard Bravo and

12  Sergeant Frank Aviles interviewed petitioner in a holding cell at the San Jose Police Department

13  Preprocessing Center. RT 899-900. In the course of the following colloquy, petitioner agreed to

14  waive his rights and speak to Bravo and Aviles:

| | |
|---|---|
| Bravo: | My name's Detective Bravo. This is Sergeant Aviles. Okay. But, so, we're talking about ah, what happened out there this morning. How do you feel about that? Do you want to talk to us this morning? You sure? |
| | Okay. So, there's no misunderstanding between us. You have the right to remain silent. Do you understand? |
| [Petitioner]: | Yes. |
| Bravo: | Anything you say may be used against you in court. Do you understand? |
| [Petitioner]: | I do. |
| Bravo: | You have the right to the presence of an attorney before and during any questioning. Do you understand? |
| [Petitioner]: | Yes. |
| Bravo: | If you cannot afford an attorney, one will be appointed to you free of charge before any questioning if you want. Do you understand that? |
| [Petitioner]: | Yeah. |
| Bravo: | And having all that in mind, basically what I want to do is just find out from you what was going on this morning. Sounds like there was a lot of |

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

5

| | | |
|---|---|---|
| 1 | | running around, some yelling and screaming, and I just want to know why you were in that house. |
| 2 | | |
| 3 | [Petitioner]: | Ah, well, I think first, um, I should have a lawyer. And ah second, I'm trying to figure out. Well, trying to do God's will. |
| 4 | Bravo: | Trying to do God's will. |
| 5 | Aviles: | What do you mean by that? You have me thrown (inaudible) that one. |
| 6 | Aviles [*sic*]: | What is, what do you mean God's will? |
| 7 | [Petitioner]: | Well, you can do good things. You can do bad things. Bad things (inaudible). |
| 8 | | ******** |
| 9 | | |
| 10 | Aviles: | Yeah. Now you said, the first thing you said, you wanted a lawyer? Is that the first thing you said? |
| 11 | [Petitioner]: | Right. Well, it was, because . . . . |
| 12 | Aviles: | Help, help us. |
| 13 | [Petitioner]: | I (inaudible), because . . . . |
| 14 | Aviles: | I just want to understand. But if you want a lawyer, we'll walk out of this room. You can't talk to me if you want a lawyer. |
| 15 | [Petitioner]: | Oh. |
| 16 | Aviles: | I just want to understand that, that's a statement you made. You want a lawyer . . . . |
| 17 | | |
| 18 | [Petitioner]: | (Inaudible). |
| 19 | Aviles: | [O]r do you want to talk to us? |
| 20 | [Petitioner]: | I want, hell, I'll just talk to you then. |
| 21 | Aviles: | Okay. Well, I won't change your mind, no. That . . . . |
| 22 | [Petitioner]: | Yeah. No, I'm, no, I'm not trying to . . . . |
| 23 | Aviles: | You understand? Okay. |
| 24 | | ******** |
| 25 | [Petitioner]: | It's an intelligent thing to do, isn't it? |
| 26 | Aviles: | Yeah, it is. Yeah. So, if you want a lawyer . . . . |
| 27 | Bravo: | But we're looking for clarification. Because you said you did want to talk to us. But then you said, well, I think I should have a lawyer. So, it's up |
| 28 | | |

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

6

to you. And then you can talk to us right now or not. (Inaudible), because right now, obviously there's not gonna be (inaudible).

[Petitioner]:    (Inaudible) work on getting a lawyer, right?

Bravo:          Not right now.

[Petitioner]:    Oh. Well, yeah, I think that later.

Bravo:          Will I personally do it? No.

Aviles:         You know how the system works, right? Right?

[Petitioner]:    I'll, I'll, I'll . . . .

Bravo:          Do you want, do you want to talk to us? Gregg.

Aviles:         You sure you want to talk to us?

[Petitioner]:    Yeah.

Aviles:         Okay. Maybe one (inaudible) . . . .

[Petitioner]:    I don't even need a lawyer though. I'll just let God handle it.

Bravo:          What's that?

[Petitioner]:    I said, I don't even need a lawyer. I'll just let God handle it.

CT 111-15.

Petitioner moved to exclude the ensuing interrogation on *Miranda* grounds. RT 34. After hearing testimony pursuant to Cal. Evid. Code § 402, the trial court denied the motion on February 24, 2004. RT 322.

On direct appeal, petitioner argued that officers interrogated him in spite of his unambiguous invocation of his *Miranda* rights. Exh. C at 11-21. The state appellate court rejected this claim:

> Appellant argues that "appellant's statement that he should speak with a lawyer needs no clarification and the questions the officers posed appear better designed to confuse and to discourage the exercise of the *Miranda* rights than to clarify appellant's intentions." Appellant asserts, "absent authoritative knowledge that God did not want appellant to invoke his *Miranda* rights . . . there is no contradiction and thus no ambiguity. Consequently, no clarification was necessary, and the interview should have been terminated forthwith." We disagree. Appellant's statement, setting forth his thoughts in numerical order and choosing the word "should," can reasonably be interpreted as expressing a conflict between his understanding that having counsel is a good idea and his faith-based motive for speaking to the officers. Officer Bravo testified, "It sounded to me

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

7

1   like he wasn't sure whether or not he wanted to have a lawyer, and he was thinking out
2   loud, well, that he thought maybe he should." After asking for clarification of what
    appellant meant by his references to God and sacrifice, the officers returned to appellant's
3   reference to a lawyer, restating it to him in stronger language than he had actually used.
    Concerning his decision whether to exercise his right to counsel, appellant acknowledged,
4   in a bantering tone, "It's an intelligent thing to do, isn't it?" Again describing the conflict
    he was feeling at the beginning of the interview, appellant resolved this conflict in his
5   statement, "I don't even need a lawyer though. I'll just let God handle it."

6                                    ********

7   [*Davis v. United States*, 512 U.S. 452 (1994)] imposes no requirement upon the
    interrogating officer to ask clarifying questions following an equivocal invocation.
8   However, if a suspect "expresses ambiguous remarks falling short of a clear waiver or
    invocation of his *Miranda* rights," officers may "continue talking with him for the limited
9   purpose of clarifying whether he is waiving or invoking those rights." (*People v. Johnson*
    (1993) 6 Cal.4th 1, 27.) Here, the trial court refrained from imposing a rule requiring the
10  absence of ambiguity or uncertainty in a request for counsel by a suspect who had not
    waived his Fifth Amendment rights. Instead, the trial court properly considered that the
11  officers could ask clarifying questions under these circumstances. A typical exchange
    between a suspect and police officers has more in common with a David Mamet script
12  than a conversation between Oxford dons. An officer seeking clarification of a suspect's
    ambiguous response to the *Miranda* admonishments, in an attempt to discern if it is an
13  invocation or a waiver, does not violate a suspect's Fifth and Fourteenth Amendment
    rights as set forth in *Miranda*.

14  Exh. F at 10-11, 13 (internal edit marks omitted).

15          The government "may not use statements, whether exculpatory or inculpatory, stemming

16  from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards

17  effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. at 444.

18  After an accused has been informed of his rights under *Miranda*, it is his burden to inform his

19  interrogator that he wishes to invoke his right to remain silent. *United States v. Alegria*, 721 F.2d

20  758, 761 (11th Cir. 1983). Officers do not have a duty to ask clarifying questions when an accused

21  makes an equivocal or ambiguous invocation of his *Miranda* rights. If "the suspect's statement is

22  not an unambiguous or unequivocal request for [silence], the officers have no obligation to stop

23  questioning him." *Davis v. United States*, 512 U.S. 452, 461-62 (1994). "Of course, when a suspect

24  makes an ambiguous or equivocal statement it will often be good police practice for the interviewing

25  officers to clarify whether or not he actually wants an attorney." *See id.* at 461.

26          The state appellate court's conclusion comports with the foregoing clearly established

27  federal law. Petitioner's initial statement upon receiving his *Miranda* advisements was ambiguous

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

8

1  and garbled. He said, "Ah, well, I think first, um, I should have a lawyer. And ah second, I'm trying

2  to figure out. Well, trying to do God's will." CT 112. Considered as a whole, petitioner's statement

3  was not only ambiguous and confusing, it raised questions as to whether he understood the nature

4  of his *Miranda* rights.

5           Under these circumstances, officers were entitled, but not required, to seek clarification

6  from petitioner. *Davis v. United States*, 512 U.S. at 461-62. They asked appropriate clarifying

7  questions designed to determine whether petitioner understood his rights and was invoking them.

8  Sergeant Aviles asked basic questions such as, "What do you mean by that?" and "What is, what do

9  you mean God's will?" CT 112. Aviles later said, "I just want to understand. But if you want a

10 lawyer, we'll walk out of this room. You can't talk to me if you want a lawyer." CT 113. Officer

11 Bravo stated, "But we're looking for clarification. Because you said you did want to talk to us. But

12 then you said, well, I think I should have a lawyer. So, it's up to you. And then you can talk to us

13 right now or not." CT 114. These questions reflected the officers' genuine confusion over

14 petitioner's initial statement after his *Miranda* advisements. To dispel the confusion and ambiguity,

15 the officers repeatedly stressed that petitioner could have a lawyer and that the choice to have a

16 lawyer was his. The officers did not ask a single question that could be construed as a substantive

17 question to develop the facts under interrogation. Eventually petitioner said, "I want, hell, I'll just

18 talk to you then." CT 113. Even then, officers stressed that petitioner could have an attorney, and

19 repeatedly asked if he was sure of his decision. Aviles said that he did not want to change

20 petitioner's mind. CT 113. Bravo asked, "Do you want, do you want to talk to us?" CT 115.

21 Aviles asked, "You sure you want to talk to us?" CT 115. Only after petitioner reiterated his

22 willingness to waive his *Miranda* rights did officers begin substantive questioning.

23           For the foregoing reasons, the state appellate court did not unreasonably deny relief on

24 petitioner's assertion of *Miranda* error. Petitioner is not now entitled to relief under the AEDPA.

25 ///

26 ///

27 ///

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

9

## II.

### THE STATE APPELLATE COURT DID NOT UNREASONABLY DENY RELIEF ON PETITIONER'S CLAIM THAT THE POLICE INTERROGATION WAS COERCIVE

Petitioner asserts that officers coerced incriminating responses from him in the course of his interrogation. Petn. at 6A. The state appellate court found this claim to be meritless:

> Appellant asserts, "When the interrogations are viewed in the totality of their circumstances, they reveal that the police did indeed take advantage of appellant's obviously impaired mental condition and brought intense pressure to bear upon his weakened will by denying his request for a lawyer, by obsessively insinuating into his mind thoughts of sex with children, by ignoring every response that showed a non-felonious intent, by insisting tirelessly that it is permissible not only to desire children but also to have sexual intercourse with children if they are willing, and by playing upon appellant's religious and patriotic sentiments."
>
> After reviewing the evidence presented at the hearing on the motion to suppress appellant's statements, as well as the tape and transcript introduced at the motion, we reject appellant's contention that the statements were involuntary. Appellant was a mature adult with substantial experience with the criminal justice system. Although he was under the influence of methamphetamine during at least some of the interrogation, he does not sound submissive, weak, or in distress on the tape. The officers may have directed the conversation toward a discussion of what appellant's intent had been when he entered the Bauer's home, rather than expanding on the discussion of the CIA conspiracy to keep appellant from having sex, but this can hardly be considered improper. Likewise, in the portions of the interrogation during which appellant discusses his religious or patriotic sentiments he sounds as if he is chatting about these topics rather than being dominated or bullied by the officers. As for "obsessively insinuating into his mind thoughts of sex with children" the officers' comments on this subject, while recurring, were not oppressive or overbearing. We cannot imagine that an officer's comment such as, "But a 15-year-old that's mature, her body's mature, that's no problem if she's willing" would cause a person who did not agree with that statement to feel coerced into agreeing that he or she did. Under the totality of the circumstances, a preponderance of the evidence shows that appellant's statement was voluntary.

Exh. F at 16-17.

The federal Constitution forbids the admission of an involuntary confession against a defendant. *Jackson v. Denno*, 378 U.S. 368, 385-86 (1964). The test for determining whether a confession is voluntary is whether the defendant's "will was overborne at the time he confessed." *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963). A statement is therefore involuntary when extracted by direct or implied promises, threats, or exertion of any improper influence. *Hutto v. Ross*, 429 U.S. 28, 30 (1976). Additionally, a finding of coercive police activity is a prerequisite to a finding that

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

10

1  a confession was involuntary under the federal Constitution. *Colorado v. Connelly*, 479 U.S. 157,

2  163-66 (1986).

3       Because this test is broad, a state court's conclusion is likely to fall within the matrix of

4  the Supreme Court's prior decisions. *See Yarborough v. Alvarado*, 541 U.S. 652, 664-65 (2004)

5  ("the range of reasonable judgment can depend in part on the nature of the relevant rule. . . . The

6  more general the rule, the more leeway courts have in reaching outcomes in case by case

7  determinations"); *Garvin v. Farmon*, 258 F.3d 951, 957-58 (9th Cir. 2001) (state court's

8  determination that confession was voluntary after initial *Miranda* violation was not objectively

9  unreasonable under deferential AEDPA standard).

10       Whether a confession is voluntary must be judged by the totality of the circumstances.

11  *Brewer v. Williams*, 430 U.S. 387, 402 (1977). Although at trial the prosecution must establish that

12  a challenged confession was voluntary (*Lego v. Twomey*, 404 U.S. 477, 489 (1972)), on collateral

13  review, the burden of proving involuntariness rests with the habeas petitioner. *See Whitaker v.*

14  *Meachum*, 123 F.3d 714, 716 (2nd Cir. 1997); *Martin v. Wainwright*, 770 F.2d 918, 925 (11th Cir.

15  1985).

16       The state appellate court did not rule unreasonably when it rejected petitioner's claims of

17  coercion. The investigating officers engaged in no activity that would have overborne petitioner's

18  will or that could be considered a threat, promise, or improper inducement. Petitioner nevertheless

19  complains that police "disregarded [his] statements of non-felonious reasons for entering the Bauers'

20  house." Petn. at 10. He believes that he gave incriminating statements only because he was

21  "[s]ubjected to a barrage of sex-obsessed questions and assertions . . . ." Petn. at 11.

22       Petitioner's claim is meritless. No Supreme Court case stands for the proposition that a

23  suspect's protestation of innocence renders any further questioning coercive. The fact that officers

24  focused on petitioner's sexual attraction and sexual activities with children was entirely proper, if

25  not fundamentally necessary to investigating the charged offense. The first substantive question that

26  officers asked was, "Why did you go next door?" CT 117. Petitioner, who had a prior conviction

27  for annoying or molesting a child, instantly replied, "Ahh, looking for girls." CT 117; RT 1014. In

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

11

light of petitioner's immediate admission that he was looking for girls in the Bauer residence, as well as his prior sex offense, officers would have been unconscionably negligent had they not vigorously and thoroughly questioned petitioner regarding his tendency and desire to commit sexual offenses. Under these circumstances, the state appellate court did not unreasonably find that police officers lawfully pressed petitioner regarding his sexual practices.

Petitioner also complains that he was intoxicated by methamphetamine. While it is undisputed that petitioner was under the influence of a stimulant during his interrogation, this was of no legal significance. Petitioner fails to cite any Supreme Court precedent establishing that his voluntary intoxication rendered police questioning inherently coercive. To the contrary, the fact that a suspect is under the influence of drugs or medication does not render a confession involuntary if the suspect was not incapacitated. *See United States v. George*, 987 F.2d 1428, 1430-31 (9th Cir. 1993); *United States v. Kelley*, 953 F.2d 562, 565-66 (9th Cir. 1992); *United States v. Martin*, 781 F.2d 671, 673-74 (9th Cir. 1985).

Here, Officer Bravo testified that petitioner "had no problems with communications." RT 257. Petitioner understood questions and replied in a "knowing fashion." RT 61, 257. While petitioner appeared to be under the influence of methamphetamine, he "seemed fairly aware and lucid." RT 930, 960-61. During the interview, Bravo found petitioner "was trying to be manipulative," often "going in directions regarding religion and whatnot." RT 943. The officers worked "to get back to the topic of the specific intent of why he was in that house." RT 943. The transcript shows that petitioner understood questions well enough to offer innocent explanations for his prior sexual offense and to posit nonsexual purposes for breaking into the Bauer residence. Furthermore, in the middle of the interview, petitioner told officers that he was "coming down" from the methamphetamine, but that he was all right. CT 180.

Petitioner further contends that officers played on his "heightened religiosity during questioning." Petn. at 9. This assertion establishes nothing. Petitioner's references to God were short, infrequent, and offered as an innocent justification for breaking into the Bauer residence in the middle of the night. CT 127, 166, 176, 189. During the interview, Officer Bravo found petitioner

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

12

"was trying to be manipulative," often "going in directions regarding religion and whatnot." RT 943. Far from exploiting petitioner's alleged "religiosity," officers told petitioner to "get off the God . . . thing," and told him they did not work for God. CT 176, 215. The officers worked "to get back to the topic of the specific intent of why he was in that house." RT 943. Petitioner fails to explain how officers could have coerced him through religious manipulation when they attempted to make him stop talking about religion.

Furthermore, the actual interrogations were very short, with the first beginning shortly after 6:30 a.m. RT 899-900. The second interview commenced at approximately 7:30 a.m and concluded between 9 and 9:30 a.m. RT 969, 977. Petitioner never complained that he was too tired or ill to answer questions. On the contrary, petitioner told officers that he was all right. CT 180. Officers also provided petitioner with candy, soda, and coffee. CT 182-83.

Under these circumstances, petitioner fails to show that the state appellate court unreasonably applied clearly established federal law, or made an unreasonable determination of facts, when it rejected his claim that the interrogation was coercive. Petitioner is therefore not entitled to relief under the AEDPA.

## III.

### THE STATE APPELLATE COURT DID NOT UNREASONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW BY FINDING THAT SUFFICIENT EVIDENCE SUPPORTED PETITIONER'S CONVICTION

Petitioner complains that his "conviction for burglary was unsupported by the evidence and violated [his] due process rights." Petn. at 15. The state appellate court found this claim to be meritless:

> Appellant was charged with committing a burglary by entering the Bauer's home with the intent to commit a violation of Penal Code section 220, which prohibits an assault with the intent to commit, rape, sodomy, oral copulation, rape in concert with another, lascivious acts upon a child, or the penetration of the genitals or anus with a foreign object. Appellant argues that the evidence showed that appellant "made a good deal of noise before he entered the home" and argues that "[t]his conduct is inconsistent with an intent to commit an assault on a member of the Bauer family, for a successful assault would require stealth and surprise." "The uninvited late-night entry by itself does not support a rational inference of the intent to commit a violation of [Penal Code] section 220 or any felony, especially given that appellant was under the influence of

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

13

methamphetamine." Appellant points out that there is no evidence that he was in possession of burglary tools, weapons, or restraining devices.

Appellant argues that because there is not evidence that the charged offense involved an intended or attempted sexual assault, evidence of his prior sexual offense cannot rationally substitute for the missing evidence. He asserts that the stipulation that he was convicted in 1993 of a misdemeanor violation of Penal Code section 647.6 does not support a rational conclusion that appellant intended to commit a violation of Penal Code section 220 because the parties' stipulation did not describe the offense in detail and whatever comments appellant made about that offense during the interrogation lack significant probative value on the element of intent in this case "for it does not appear that a burglary was involved and it does not appear that the girl was a stranger." As appellant sees it, the only other evidence concerning appellant's intent, aside from the prior conviction, was the inferences to be drawn from appellant's other statements during the interrogation. Appellant argues, "Appellant was evidently out of touch with reality, fantasizing about the CIA, about being followed, about sex rings involving children. No rational factfinder could be confident that anything appellant reported in those interviews was true." We disagree. Admittedly some of appellant's statements show beliefs that could be considered delusions. However, his statements also show that he clearly understood that he was entering his neighbor's house, that he knew that Terry and her daughter lived there, that he was looking that night for a "marathon sport fuck," and that he thought Terry was attractive and was interested in having sex with her. Appellant told the police, "my primary goal when I went in that house was to get pussy. . . ." A rational factfinder could view the evidence as proving that appellant had various concurrent and compatible reasons for entering the Bauer home, including the intent to commit a violation of Penal Code section 220. Viewing the whole record in the light most favorable to the judgment below, including appellant's repeated sexual references in his statements regarding his intent and his prior conviction for a lewd act with a child, we conclude that the record discloses substantial evidence supporting the jury's verdict and appellant was not denied due process.

Exh. F at 18-19.

The principles underlying an insufficient evidence claim are well established. The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). A federal habeas court must presume that the trier of fact resolved any conflicts in the evidence in favor of the prosecution and defer to that resolution. *Id.* at 326; *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994). Under the AEDPA, the question is whether the state court reasonably applied *Jackson*. *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

Viewing the evidence in the light most favorable to the judgment, a reasonable trier of fact could have found that sufficient evidence supported the conviction. By convicting petitioner of first

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

14

degree burglary, the jury found that petitioner entered the Bauer residence with intent to commit a sexual assault within the meaning of Cal. Penal Code § 220. CT 272, 275. "Since burglary arises when the person makes entry with the requisite felonious intent, it is irrelevant that the felony was not subsequently completed." *In re Anthony M.*, 116 Cal.App.3d 491, 501 (1981). "Intent is inherently difficult to prove by direct evidence." *People v. Smith*, 64 Cal.App.4th 1458, 1469 (1998). "Therefore, the act itself together with its surrounding circumstances must generally form the basis from which the intent of the actor may legitimately be inferred." *Id.*

Here, the evidence overwhelmingly showed that petitioner entered the Bauer residence with the intent to violate § 220, i.e., the intent to commit assault and to commit "rape, sodomy, oral copulation, and/or lewd acts with a child." CT 275. When asked why he broke into the Bauers' residence, petitioner replied, "Ahh, looking for girls." CT 117. Petitioner specifically noted his attraction to Terry Bauer. CT 118, 120, 139-40. He also said that he was "trying to have a marathon sport fuck," and that he was "just out to have sex with anybody that's willing." CT 152. He said, "I try and break in. I'll try and do it again. I'll try and do it again. . . . [¶] [K]eep doing it until I can get laid." CT 156. If Terry had been awake, petitioner "probably would've" asked her to have sex. CT 178.

Three separate times, petitioner explained his intrusion into the Bauer residence by saying, "It's a pussy thing." CT 183. Petitioner explained that when he jumped over the fence surrounding the Bauers' yard, "[T]hat's all that's on my mind is pussy." CT 200. He broke into the Bauers' residence because "there's a sex scandal going on and for some reason I can't have no fucking pussy because of it and I'm pissed." CT 198. Petitioner also admitted that he entered the Bauers' residence because he was "looking for Terry." CT 140, 222. He was hoping "to get laid." CT 223. *"My primary goal when I went in that house was to get pussy . . . ."* CT 226 (italics added).

In light of this overwhelming evidence, it is specious for petitioner to assert that insufficient evidence supported his conviction for burglary with intent to commit a sex offense. Petitioner accordingly fails to establish that the state appellate court ruled unreasonably within the meaning of the AEDPA.

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.

### THE STATE APPELLATE COURT DID NOT UNREASONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW BY REJECTING VARIOUS EVIDENTIARY CLAIMS

Petitioner makes various evidentiary claim relating to the admission of his statement to police officers. Petn. at 17-26. These claims fail to state a federal question. It is well-settled that federal habeas corpus relief does not ordinarily lie to review questions about the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A federal court is "not a State Supreme Court of errors" and does not interfere with a state evidentiary ruling unless the ruling regarding such evidence was so prejudicial that its admission or exclusion violation fundamental due process and the right to a fair trial. *Jammal v. Van de Kamp*, 926 F.2d 918 (9th Cir. 1991); *see also Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993).

Petitioner first complains that the trial court improperly admitted evidence of his prior sexual offenses, which he referred to during the course of his interrogation. Petn. at 18. "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process." *Jammal v. Van de Kamp*, 926 F.2d at 920, emphasis in original. Based on this principle, the Ninth Circuit has repeatedly held that evidence of prior bad acts does not violate due process where it is admitted to prove a specific issue in dispute. *E.g., Williams v. Stewart*, 441 F.3d 1030, 1040 (9th Cir. 2006). Here, petitioner ignores the state appellate court's clear finding that statements regarding prior sexual offenses were only admitted for purposes of showing his state of mind. "Appellant's statements were all made in the context of an exploration of his state of mind at the time he entered the Bauer home and, in that context, constituted admissions of a sexual motive from which an intent to violate Penal Code section 220 could be inferred." Exh. F at 26. Petitioner disingenuously ignores the fact that the trial court specifically instructed the jury to disregard "anything about the defendant's criminal history or possible prior custodial status for any purpose," with the "one exception" of petitioner's "conviction for the misdemeanor offense of child annoyance or molestation for the purpose and in the manner described by [CALJIC No. 2.50.01]." RT 1057. Petitioner must read this instruction and acknowledge it. "The Court presumes that jurors, conscious

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

16

1  of the gravity of their task, attend closely the particular language of the trial court's instructions in

2  a criminal case and strive to understand, make sense of, and follow the instructions given them."

3  *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). "'[W]e must assume that juries for the most part

4  understand and faithfully follow instructions. The concept of a fair trial encompasses a decision by

5  a tribunal that has understood and applied the law to all material issues in the case.'" *Id.*

6        Petitioner next asserts that his statement to officers was inadmissible because it was

7  "extremely ambiguous, confusing, and misleading." Petn. at 19. The fact that his own statements

8  were rambling at times does not render them inadmissible. Petitioner further complains that there

9  were numerous redactions in the transcript of the interview, and too many portions in which the

10 interrogation was inaudible. Petn. at 21. Petitioner fails to cite any Supreme Court precedent

11 establishing that admission of a statement with redactions or inaudible responses constitutes a due

12 process violation. Moreover, petitioner assiduously ignores the fact that the trial court specifically

13 instructed the jury not to consider "things that are blacked out" or redactions in the interrogation.

14 RT 902; Exh. F at 27-28. As noted above, it is presumed that jurors faithfully follow instructions.

15 Petitioner fails to explain why the jury could not have followed the instructions given here.

16        Even assuming that petitioner could establish that the trial court committed constitutional

17 error by admitting the interrogation with references to prior sexual offenses or excessive redactions,

18 he cannot establish that the error had a "substantial and injurious effect or influence in determining

19 the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. at 637. Here, the evidence of petitioner's guilt

20 was overwhelming. Officers apprehended petitioner inside the Bauer residence in the middle of the

21 night. During interrogation, petitioner consistently and repeatedly expressed his intent to obtain

22 "pussy" when he entered the Bauer home. Petitioner's claims of evidentiary error therefore fails

23 under the AEDPA.

24 ///

25 ///

26 ///

27

28
     Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

17

## V.

## THE STATE APPELLATE COURT DID NOT UNREASONABLY APPLY CLEARLY ESTABLISHED FEDERAL LAW BY REJECTING PETITIONER'S CLAIM OF PROSECUTORIAL MISCONDUCT

Petitioner complains that the prosecutor committed misconduct by misstating and misrepresenting the evidence. Petn. at 27. The state appellate court considered and rejected this claim:

> Appellant cites to several parts of closing argument and contends that the prosecutor mischaracterized and misstated appellant's statements to the police. During the interrogation, Aviles said to appellant, "You tend to like young girls when you're on crank. Not when you're normal. When you're on crank" to which appellant responded "Yeah." Appellant said he could not "even fathom a ten or twelve year old girl being able to have sex" and Aviles asked him "How 'bout a 15 year old?" and commented "that's no problem if she's willing. Appellant said "take away the psychological issues" and "the diseases" and Aviles added "just normal sex." Appellant said "Well, yeah." During closing argument, the prosecutor referred the jury to this part of the interrogation and argued, "Then he talks about having sex with a 15-year-old at the bottom of Page 55. Where he hmms and haws about it, middle of Page 56. But ultimately he says oh, yeah, yeah. Well, yeah. Excuse me, I misspoke. Well, yeah, sex with a 15-year-old." Appellant argues that in this passage the prosecutor mischaracterized appellant's statements, implying "that appellant had engaged in sex with a fifteen-year-old and that he is not averse to sex with minors, even though the passage does not support those interpretations."
>
> In argument, the prosecutor said, "You can absolutely use the fact that this individual's a convicted sex offender, infer that he had the disposition to do it again. And he tells you when I'm under the influence of meth, I like girls; the younger the better." Appellant argues that this mischaracterized the evidence because during the interrogation appellant said that when he was under the influence of methamphetamine he likes girls "the younger, the better, provided they're old enough."
>
> Appellant complains that the prosecutor argued "in the second interview, he comes close to telling the officer the real reason may not have been for Terry." Appellant argues that because "[t]he prosecutor did not identify any portion of the second interview that would warrant that characterization" the prosecutor invited the jury "to speculate about what appellant might have come 'close to telling the officer.'" Appellant complains that the prosecutor misstated the evidence in arguing "Did he have a specific intent? He tells you that on the tape: Why did you go over there? I went over there for sex. I went over there for the P word. I went over there because I hadn't been getting laid. That's why I took the dope in the first place."
>
> Appellant fails to observe that the prosecutor said, "We also know a couple of things about this. This begs the scrutiny of the transcript, not just the tape itself. You get to decide what you find to be credible on that tape, . . . what statements you do not." The prosecutor quoted from those parts of appellant's statement that supported the prosecution's theory of the case. The jury heard and read the entire transcript and tape, and was urged by both the prosecution and the defense to review them during deliberations. We have reviewed

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

18

parts of the argument that appellant complains are mischaracterizations or misstatements of the evidence and find no misconduct. None are comparable to the arguments made by the prosecutors in the cases upon which appellant relies. For example, in *People v. Gaines* (1997) 54 Cal.App.4th 821, the prosecutor told the jury during closing argument that the fact that the defense failed to call a witness who was sitting in the courtroom and who the defendant said would be testifying for him meant that the witness would have offered testimony damaging to the defense. In *People v. Bolton* (1979) 23 Cal.3d 208, the prosecutor, during closing argument, stated that but for rules of evidence that shielded the defendant, he would have been able to show that the latter had prior convictions and a propensity for wrongful acts. In contrast, the prosecutor's remarks here were not misrepresentations that would create a false impression that appellant had a sexual interest in children and that he entered the house in search of sex. There was ample support for this interpretation in appellant's statements during the interrogation. The passages either quoted or paraphrased by the prosecutor were all susceptible to the interpretations the prosecutor advanced, and the jury had the transcript to compare with the prosecutor's statements. Whether the prosecutor was quoting from the transcript or arguing how the gist of appellant's statements supported the prosecution's theory as to appellant's intent, the comments complained of were not mischaracterizations or misstatements and the record provided factual support for the arguments.

Appellant contends that the prosecutor misused evidence that was admitted for a limited purpose. During cross-examination, defense counsel asked Detective Pierce whether, when he saw that appellant was under the influence of methamphetamine and talking about the CIA and God, the detective could have had a mental health professional observe the interview. Defense counsel questioned Detective Pierce about a portion of the interview during which Detective Moore told appellant, "You're just using crank because you're fucking crazy and it's fucking up your head." Defense counsel established that the detectives did not use the interview to explore possible psychological issues appellant may have had and did not "feel there was a need" to talk to appellant again once he was no longer under the influence of methamphetamine. On re-direct examination, the prosecutor asked Detective Pierce why he did not "call a doctor or psychiatrist" during the interview. Detective Pierce testified over defense objection, "I didn't think there was any need for a psychologist or doctor." He said that he believed that during the interrogation appellant was "trying to manipulate the situation" and "it was obvious to us he's been in the situation before, and he was just trying to control the situation, control the interview to go the way he wanted it to go." The trial court instructed the jury, "You should consider the officer's opinions of the defendant's veracity, responsiveness and mental state only as it helps you to understand the officer's actions, if you find that helpful, and not for any other reason. Specifically, it's entirely up to you to gauge the truthfulness of the defendant's statements made during the course of the interview."

In closing argument, defense counsel said, "One reasonable explanation for his behavior is that he was delusional." He said that in listening to the interrogation tapes the jury "will hear that [appellant's] thinking is disorganized and dysfunctional. You will hear that at times, he's answering a question that they ask him, two or three questions later." In rebuttal, in response to these arguments, the prosecutor pointed to the absence of any expert testimony that appellant was delusional and argued, "As I said, every officer that had contact with him in the tapes, they keep saying, You have the scenario played out; sounds like you thought this one through; you're going off on this tangent, and Officer Moore in particular is saying that's ridiculous. Come back. Moreover, none of that occurs in any kind of detail. The whole thing about the CIA is ridiculous. . . . Detective Pierce: Lucid, aware, knew what he was doing. We were focusing him back because we didn't believe he was being forthright with us. He was playing games."

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

19

1   Appellant argues, "The prosecutor exploited the objectionable quality of this evidence–the
2   likelihood that the jury would treat the officers' statements in the transcripts as expert
    evidence about appellant's mental state and credibility."   Respondent argues that this
3   claim of misconduct "fails because the court's limiting instruction applied to the in-court
    testimony of Detective Pierce; it never purported to limit the prosecutor's argument based
    on statements made by officers during the interrogation, or the jury's consideration of the
4   text of the interrogation."

5   We find there is no reasonable likelihood that the jury construed or applied the
    prosecutor's argument in an objectionable fashion.  To the extent that counsel argued as
6   a defense that appellant was delusional when he entered the Bauer home, and argued that
    appellant's statements during the interrogation supported that defense, the prosecutor
7   could point to the absence of expert testimony that appellant was delusional.  When the
    argument that there was no expert testimony concerning appellant's mental state is
8   considered with the court's limiting instruction, it is unlikely that the jury would treat
    either Detective Pierce's testimony or the officers' statements in the transcripts as expert
9   evidence about appellant's mental state.

10  Exh. F at 36-40 (footnote omitted).

11       A federal court on habeas corpus is not concerned with ordinary trial error by a prosecutor.

12  *Smith v. Phillips*, 455 U.S. 209, 220 (1982).  A claim of prosecutorial misconduct during closing

13  argument entitles a petitioner to relief on federal habeas corpus only if the conduct so infected the

14  fairness of the trial that the petitioner was deprived of due process. *Darden v. Wainwright*, 477 U.S.

15  168, 181 (1986); *Smith v. Phillips*, 455 U.S 209, 219 (1982).  "Improper argument does not, per se,

16  violate a defendant's constitutional rights." *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993).

17  Indeed, the category of infractions that violate "fundamental fairness" is defined "very narrowly."

18  *Dowling v. United States*, 493 U.S. 342, 352 (1990).  The prosecutor is entitled to argue reasonable

19  inferences based on the evidence.  *Menendez v. Terhune*, 422 F.3d 1012, 1037 (9th Cir. 2005).

20  "Even if a prosecutor's argument is egregiously improper, a federal court cannot issue a writ of

21  habeas corpus to state authorities unless the prosecutor's comments so infected the trial with

22  unfairness as to make the resulting conviction a denial of due process." *Thompson v. Borg*, 74 F.3d

23  1571, 1576 (9th Cir. 1996) (internal quotation marks omitted).

24       Here, the state appellate court did not unreasonably apply clearly established federal law,

25  nor did it make an unreasonable determination of facts. Petitioner offers a series of complaints about

26  the prosecutor's alleged mischaracterization and misstatement of his words.  He contends that these

27  misrepresentations created the false impression that he had a sexual interest in children and that he

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

1  entered the Bauer residence in search of sexual intercourse with a female minor. This claim fails

2  because petitioner's interrogation supported the prosecutor's argument. He specifically stated that

3  he would consider having sex with a 15-year-old girl. CT 158-59. Furthermore, even if petitioner

4  could establish that the prosecutor unlawfully misstated the evidence, it would have had no effect

5  because CALJIC No. 1.02 informed the jury that statements of the attorneys are not evidence. CT

6  243. There is, accordingly, no reason to believe that the jury would have been swayed by

7  misstatements of the evidence.

8       Petitioner next argues that the prosecutor violated the court's limiting instruction directing

9  the jury to consider Detective Pierce's trial testimony regarding appellant' veracity during

10  interrogation solely for purposes of understanding the officer's course of investigation and not for

11  determining appellant's truthfulness. RT 1032-33. This claim fails because the court's limiting

12  instruction applied to the in-court testimony of Detective Pierce; it never purported to limit the

13  prosecutor's argument based on statements made by officers during the interrogation, or the jury's

14  consideration of the text of the interrogation. The prosecutor's argument was therefore entirely

15  permissible.

16       Assuming that petitioner could establish that the state appellate court unreasonably denied

17  relief on his claim of prosecutorial misconduct, he cannot show that the error had a "substantial and

18  injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. at

19  637. Here, the evidence of petitioner's guilt was overwhelming. Officers apprehended petitioner

20  inside the Bauer residence in the middle of the night. During interrogation, petitioner consistently

21  and repeatedly expressed his intent to obtain "pussy" when he entered the Bauer home. Petitioner's

22  claim of prosecutorial misconduct therefore fails under the AEDPA.

23  ///

24  ///

25  ///

26

27

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH

21

1

**CONCLUSION**

2

For the foregoing reasons, respondent respectfully requests that the order to show cause

3

be discharged, and the petition be denied.

4

Dated: October 19, 2007

5

Respectfully submitted,

6

EDMUND G. BROWN JR.
Attorney General of the State of California

7

DANE R. GILLETTE
Chief Assistant Attorney General

8

9

GERALD A. ENGLER
Senior Assistant Attorney General

10

PEGGY S. RUFFRA
Supervising Deputy Attorney General

11

12

13

/s/ Dorian Jung
DORIAN JUNG
Deputy Attorney General

14

Attorneys for Respondent

15

16

SF2007402488
20109492.wpd

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum Of Points And Authorities In Support Of Answer To Petition For Writ Of Habeas Corpus - *Williams v. Horel* - C 07-04269 TEH