Maureen L. Fox, SBN 172711
Attorney for Gregory Williams, Petitioner
PMB 431, 15732 Los Gatos Blvd.
Los Gatos, CA  95032
Tel:  (408) 358-2135
Fax:  (408) 228-0887
Email:  attorneyfox@verizon.net

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| Gregory Williams, | ) |
|---|---|
| | ) |
| Petitioner, | ) NO.  C 07-04269 TEH |
| | ) |
| v. | ) PETITIONER'S REQUEST |
| | ) FOR CERTIFICATE OF |
| Robert Horel, Warden | ) APPEALABILITY FROM |
| | ) DENIAL OF WRIT OF |
| Respondent. | ) HABEAS CORPUS |
| | ) |

TABLE OF CONTENTS

page

Table of Authorities                                                                    ii

Introduction                                                                             1

Petitioner Submits That He Has Made A Substantial Showing Of The
Denial Of A Constitutional Right With Respect To The Following
Issues                                                                                   2

1. The police interrogations of petitioner were inadmissible because
they violated petitioner's Fifth and Fourteenth Amendment rights as
set forth in *Miranda v. Arizona*.                                                       2

2. The Trial Court Erred And Violated Petitioner's Rights Against
Self-Incrimination and to Due Process By Admitting Into Evidence
The Police Interrogations Because Petitioner's Responses Were Not
Voluntary.                                                                               4

3. The Conviction For Burglary Is Unsupported By The Evidence
And Violates Petitioner's Due Process Rights.                                            5

4. The Trial Court Erred And Violated Petitioner's Due Process
Rights By Admitting Evidence Of Prior Sexual Offenses, Evidence Of
Petitioner's Character Or Disposition, And Other Evidence Contained
In The Tapes And Transcripts Of The Police Interrogations.                               6

5. The Prosecutor Engaged In Misconduct And Violated Petitioner's
Due Process Rights.                                                                      8

Conclusion                                                                               9

i

1

2

TABLE OF AUTHORITIES

3

page

4

5  United States Code

6  28 U.S.C. § 2253                                                    1

7  <u>Federal Rules of Appellate Procedure</u>

8  22                                                                  1

9  <u>Cases</u>

10  *Barefoot v. Estelle*, 463 U.S. 880 (1983)                        1,2
    *Davis v. United States*, 512 U.S. 452 (1994)                     2
11  *Lambright v. Stewart*, 220 F.3d 1022 (9th Cir. 2000)             2,9
    *Miranda v. Arizona,* 384 U.S. 436 (1966)                         2,3
12  *Sassounian v. Roe*, 230 F.3d 1097 (9th Cir. 2000)                2
    *Slack v. McDaniel*, 529 U.S. 473 (2000)                          1,2

13

14

15

16

17

18

19

20

21

22

23

24

25                            ii

26

27

1

2

Maureen L. Fox, SBN 172711
3  Attorney for Gregory Williams, Petitioner
PMB 431, 15732 Los Gatos Blvd.
4  Los Gatos, CA 95032
Tel: (408) 358-2135
5  Fax: (408) 228-0887
Email: attorneyfox@verizon.net

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  Gregory Williams,                        )
                                             )
11  Petitioner,                              ) NO.  C 07-04269 TEH
                                             )
12  v.                                       ) PETITIONER'S REQUEST
                                             ) FOR CERTIFICATE OF
13  Robert Horel, Warden                     ) APPEALABILITY FROM
                                             ) DENIAL OF WRIT OF
14  Respondent.                              ) HABEAS CORPUS
    _____)

15                              **Introduction**

16         Petitioner, Gregory Williams, respectfully asks this Court to grant him a certificate of

17  appealability to allow him to appeal this Court's order and judgment dismissing his petition for

18  writ of habeas corpus. The judgment sought to be appealed from was filed March 10, 2008; the

    order of dismissal on which judgment is based was filed on March 5, 2008.

19         In order to proceed on appeal, a certificate of appealability is necessary. 28 U.S.C. §

20  2253. This Court must issue the certificate or state the reasons why it will not do so. Fed. R.

21  App. P. 22 (b). As to each of petitioner's claims, a certificate must issue where he has made "a

22  substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). This is

23  essentially a codification of the probable cause standard established in *Barefoot v. Estelle*, 463

    U.S. 880, 893 (1983). *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

24         To meet this "modest standard," the petitioner "must demonstrate that the issues are

25  debatable among jurists of reason, that a court could resolve the issues [in a different manner], or

Petitioner's Request for Certificate of Appealability  - Williams v. Horel – C 07-04269 TEH
26                              Page 1 of 9

27

that the questions are adequate to deserve encouragement to proceed further. *Lambright v.*
*Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000) [citations omitted]; see also *Slack v. McDaniel*,
*supra*, 529 U.S. at 475, *Sassounian v. Roe*, 230 F.3d 1097, 1101 (9th Cir. 2000). Petitioner is not
required to show that he will prevail on the merits. *Barefoot v. Estelle*, *supra*, 463 U.S. at 893,
n.4; *Lambright v. Stewart*, *supra*, 220 F.3d at p. 1025.

### Petitioner Submits That He Has Made A Substantial Showing Of The Denial Of A Constitutional Right With Respect To The Following Issues:

**1. The police interrogations of petitioner were inadmissible because they violated petitioner's Fifth and Fourteenth Amendment rights as set forth in *Miranda v. Arizona*.**

Upon being given the *Miranda* warnings, petitioner stated "Ah, well, I think first, um, I
should have a lawyer. And ah, second, I'm trying to figure out. Well, trying to do God's will."
(1CT 112.) The police proceeded to ask questions and make comments relating to petitioner's
request for counsel. Petitioner made several comments about having a lawyer. The police told
him that if he wanted a lawyer, he could not speak with them (a contradiction of the *Miranda*
warnings.) Eventually, petitioner agreed to proceed without counsel. (1CT 114-115.)
In *Davis v. United States*, 512 U.S. 452 (1994) the United States Supreme Court held that "*after*
*a knowing and voluntary waiver of the* Miranda *rights,* law enforcement officers may continue
questioning until and unless the suspect clearly requests an attorney." *Id*. at p. 461. Italics
added. Petitioner argued that *Davis* cannot be read to support a broader rule requiring the
absence of any ambiguity or uncertainty in requests for counsel by suspects who have not waived
their Fifth Amendment rights, for nothing in *Davis* supports such expansion of its holding and
such a reading would conflict with *Miranda v. Arizona,* 384 U.S. 436 (1966), which says that if
the suspect "indicates *in any manner* and at any stage of the process that he wishes to consult
with an attorney before speaking there can be no questioning." *Id*. at 444-45. Italics added.

Petitioner also argued that even if the Supreme Court precedent *did* require the defendant
to show that he made an unambiguous request for counsel even in the absence of any prior
waiver, petitioner's conviction cannot stand, for the state court conclusion that petitioner made
no clear request for counsel was not a reasonable determination of the facts. Upon being read his

*Miranda* rights, petitioner said "I think first, um, I should have a lawyer." (2CT 112.) The officers understood that petitioner meant that he wanted a lawyer. "Now you said, the first thing you said, you wanted a lawyer? Is that the first thing you said?" Officer Aviles asked, and petitioner responded "Right." (CT 113.) Even assuming that the initial statement had been ambiguous, no ambiguity remained when petitioner agreed that the first thing he had said was that he wanted a lawyer.

The officers did not "clarify" petitioner's intent, but strove to discourage petitioner from insisting on counsel. They told him that if he wanted a lawyer, the officers would walk out of the room (1CT 113), implying that he would left alone there, handcuffed to the table. They also told him that he had to choose between talking with the officers and having a lawyer (1CT 113), which contradicted their earlier assurance, required by *Miranda*, that petitioner had the right to the presence of an attorney before and during questioning. 1CT 111; *Miranda v. Arizona, supra*, 384 U.S. at pp. 479-480. The officers parried petitioner's repeated references to a lawyer by telling him that he could not have a lawyer just then, without reassuring him that a lawyer would be made available soon. They said "it's up to you. And then you can talk to us right now or not. (Inaudible), because right now, obviously there's not gonna be (inaudible)," prompting petitioner to say "(Inaudible) work on getting a lawyer, right?" to which Officer Bravo responded "Not right now." (CT 114.) When petitioner suggested that he thought that it would be done later, Officer Bravo did not provide confirmation, but instead told petitioner that Bravo himself would not take the necessary steps to ensure that petitioner obtained a lawyer. (CT 114.) Only when petitioner's rights were so "clarified" that he understood that no lawyer would be provided for him anytime soon; that Officer Bravo would make no efforts to obtain a lawyer; and that, if he persisted in demanding a lawyer, the officers would walk out of the room where he was handcuffed to a table, did petitioner abandon his efforts to obtain a lawyer. (CT 115.)

Petitioner respectfully suggests that this issue is debatable among jurists of reason and merits consideration on appeal.

1

2

**2. The Trial Court Erred And Violated Petitioner's Rights Against Self-Incrimination and to Due Process By Admitting Into Evidence The Police Interrogations Because Petitioner's Responses Were Not Voluntary.**

3

4

Sleep-deprived and suffering from methamphetamine intoxication, as the police knew (1RT 62-63, 2RT 264), petitioner was handcuffed and subjected to two back-to-back interrogations in an interrogation room. The officers did not ask petitioner whether he wanted to waive his rights, did not honor his request for a lawyer (2CT 112), and discouraged him from seeking a lawyer, falsely telling him he could not speak with them if he insisted on his right to counsel.

5

6

7

8

9

The transcripts of the interrogations reveal that petitioner was confused, hallucinating, and paranoid. ("I know there's games going on." (1CT 122.) "Consistent patterns .. of, ah, somebody's playing tricks on you." (1CT 126.) "There's ah there's networks and something going on out there big time." (1CT 164.) "I saw the networks materialize before my eyes." (1CT 167.) "There's a whole bunch of things that are going on. Uh, the whole concept of God the surveillance system everything. The comprehension that's going on my head ... the CIA that's following me, uh, immunity, um the fact that I can walk by a thousand, ten thousand houses and never help one person in a window ..." (1CT 189).) Petitioner explained that he went next door to find a piece of the puzzle, having to do with the movement of people, which indicated a sex ring in which the CIA was involved, which was tied up with the concept of God and the whole surveillance system, which somehow prevented him from having any success with women, and that he believed that if he went over to the Bauers' house he might obtain some information having to do with DNA which would explain why he is so unsuccessful with women. (1CT 186-189, 191-192, 198-199.)

10

11

12

13

14

15

16

17

18

19

20

The officers played upon petitioner's heightened religious sentiment, by agreeing with him that sometimes people have to sacrifice themselves (1CT 113), assuring him that God works in mysterious ways and never gives us more than we can carry (1CT 114-115), telling him that God was there with the three of them, watching (1CT 160), and that "God is the only one who is clean." (1CT 178.)

21

22

23

24

25

26

27

They told him that girls aged ten to twelve know right from wrong and can say yes or no (1CT 158); that there is nothing wrong with liking younger girls (1CT 161); that there is no problem with having sex with a fifteen-year-old if she is willing (1CT 159); that petitioner should consider the question of sex with a willing fifteen-year-old by "tak[ing] away" the objections petitioner raised about psychological issues and the possibility of disease (ibid.); and that a typical red-blooded American is a horny man (1CT 174). They also told him that someone who is on crank has an out-of-body experience in which he cannot control his body (1CT 160) and that this is petitioner's chance to get help. (1CT 170, 174.)

The police suggested to petitioner that he might have wanted to touch his neighbor Mrs. Bauer without waking her up (1CT 121), that he was in the mood for love when he went next door (1CT 132), that the puzzle he was trying to solve by going over there "has something to do with why you can't get laid" (1CT 144) even though he had previously spoken of having gone there because he wanted to figure out where the Bauers were staying during the construction work being done on their house, (1CT 132), that he feels intense sexual desire and wants underage girls when under the influence of methamphetamine. (1CT 145, 157, 158.) Subjected to this barrage of sex-obsessed questioning, petitioner admitted that "when I spin out on crank, I try to fuck anything, ...." (1CT 147), that he's "just out to have sex with anybody that's willing" (1CT 152), tends to like young girls when he's on crank (1CT 158), has touched young girls in the past (1CT 150), and could be called "a child molester." (1CT 160.)

Petitioner respectfully suggests that whether his will was overborne when he made his comments is debatable among jurists of reason and merits consideration on appeal.

**3. The Conviction For Burglary Is Unsupported By The Evidence And Violates Petitioner's Due Process Rights.**

Petitioner argued that, once his unreliable ravings during the interrogations are set aside, insufficient evidence remains to prove an intent to commit a sexual assault. This Court concluded that petitioner's statements during the interrogations, combined with other evidence, proved the requisite criminal intent, and did not conclude that there was sufficient evidence apart from the statements made during the interrogations, which this Court found sufficiently reliable.

1

2    During the interrogations, petitioner claimed to have gone into the hours next door to find
3 a piece of the puzzle, having to do with the movement of people, which indicated a sex ring in
4 which the CIA was involved, which was tied up with the concept of God and the whole
5 surveillance system, which somehow prevented him from having any success with women, and
6 to have believed that if he went over to the Bauers' house he might obtain some information
having to do with DNA which would explain why he is so unsuccessful with women. (1CT186-
7 189, 191-192, 198-199.) Petitioner's statement that "it's a pussy thing" must be understood in
8 the context of his statements as a whole. Petitioner apparently believed that if his investigations
9 at the Bauers' house were fruitful, he would resolve the mystery and would then be successful
10 with women again, and in that sense it was "a pussy thing." The entirety of the interrogations
reveals that petitioner was confused and hallucinating. His statements are too unreliable to
11 support the jury's conclusion that he possessed the intent to commit a sexual assault when he
12 went to his neighbors' home.

13    Petitioner respectfully asks this Court to find that the issue is rationally debatable and
14 merits consideration on appeal.

15 **4. The Trial Court Erred And Violated Petitioner's Due Process Rights By Admitting
Evidence Of Prior Sexual Offenses, Evidence Of Petitioner's Character Or Disposition,
16 And Other Evidence Contained In The Tapes And Transcripts Of The Police
Interrogations**.

17    Petitioner argued that the interrogations were so ambiguous, confusing, and misleading
18 that their admission in evidence violated his due process rights. Asked about his prior offense,
19 petitioner replied "there's an accusation that I touched a seven year old girl in a sexual manner"
20 (1CT 145), but it is unclear whether that is the accusation resulted in his child molestation
conviction, or whether this was some other, perhaps never substantiated, accusation. Later, he
21 was asked, "Eight year olds that maybe didn't want to be touched, that you touched? They all
22 wanted to be touched?" and petitioner said "Well, the one that I'm talking about" (1CT 155)
23 which could be understood by the jury as a reference to a girl other than the seven-year-old
24 previously mentioned, although it is not clear whether there was ever any sexual molestation of
any eight-year-old girl. Petitioner spoke of "a relapse" which could mean a drug relapse or a
25

Petitioner's Request for Certificate of Appealability - Williams v. Horel – C 07-04269 TEH
Page 6 of 9

26

27

sexual relapse. (1CT 155.) Asked who the girl was, petitioner spoke of someone named Denise, and then said he has known her since childhood. (1CT 155.) Whether petitioner himself was an adult or a child at the time is unclear. Petitioner also said that he had hooked up with his former girlfriend when she was 17 (1CT 163), but it is not clear how old petitioner himself was at that time.

Asked if he had gone next door to rape the little girl, petitioner answered that 18 years of age is the (presumably lower) limit, and then spoke of the problems that arose in his marriage because he partied with children, including his wife's sixteen-year-old daughter. (1CT 128.) "And we were too close together," he said. (1CT 128.) He said that he "hit on" the girl, but denied that he did anything. (1CT 129.) What petitioner meant by "hit on" is unclear. Nonetheless, the prosecutor relied on this passage in oral argument, saying "And at the bottom of page 18 [1CT 128] he starts talking about minors. 18 is the limit but 16-year-old, good. And he's been engaged in situations like that when he's on meth, which is what we have here." (Aug. RT 51.) The questions posed by the police also could have led the jury to believe that the police had information about other sexual offenses. After asking petitioner if the young girl at the Bauer house had anything to do with his going to the house (to which petitioner responded, "No"), Aviles said "There's not gonna be another one of those accusations where, maybe you went to the house and you're looking for some ten year old girl, and then you touch her" (1CT 145), implying falsely that there had been accusations in the past that petitioner entered houses and touched ten-year-old girls.

In his filings in this Court, petitioner documented the numerous ambiguous and misleading elements in the interrogations. Whether the interrogations and the prior conviction for annoying or molesting a child were so inflammatory and lacking in probative value that their admission into evidence infected the trial with unfairness is rationally debatable and merits consideration on appeal.

1

2

**5. The Prosecutor Engaged In Misconduct And Violated Petitioner's Due Process Rights.**

3          Petitioner argued that the prosecutor made many inaccurate and misleading statements to

4 the jury and misused evidence that was admitted for a limited purpose. Petitioner will not recite

5 all the instances of claimed misstatements here, but will present a few examples. Petitioner

6 noted that, in the interrogations, the police told petitioner that there is no problem with having

sex with a fifteen-year-old if she is willing (1CT 158-159) and that petitioner should consider the

7 question of sex with a willing, physically mature fifteen-year-old by "tak[ing] away" the

8 objections petitioner raised about the psychological issues and the possibility of disease." (*Ibid.*)

9 Petitioner eventually responded "Well, yeah," (1CT 158-159), which might indicate assent to the

10 officers' limited suggestion (that, in the abstract, there could be no wrong if you remove the

possibility of disease and the psychological issues) or might indicate that petitioner was just

11 encouraging the officers to continue their discussion. Nonetheless, the prosecutor told the jury

12
> Then he talks about having sex with a 15-year-old at the bottom of Page 55 [I CT
13
> 158]. Where he hmms and haws about it, middle of Page 56. But ultimately he
> says oh, yeah, yeah. Well, yeah. Excuse me, I misspoke. Well, yeah, sex with a
14
> 15-year-old.
>
> (Aug. RT 57.)

15 The prosecutor also said, "He tells you that he's not averse to engaging in sex with minors."

16 (Aug. RT 57.) Petitioner did not say that either. The prosecutor also stated in rebuttal argument

17 (Aug. RT 129) that petitioner said that under the influence of methamphetamine he likes girls,

"the younger the better." Petitioner actually said "the younger, the better, *provided they're old*

18 *enough*." (1CT 54. Emphasis added.) The prosecutor used petitioner's comment that the

19 daughter is not as good looking as her mother as evidence that petitioner was thinking sexually

20 about the daughter, saying, "This is a child. Not as good looking as her mom? He's describing a

21 child in that fashion?" (Aug. RT 49.) Petitioner's comment, however, was in response to the

officer's question "She as good looking as her mom?" (1CT 119.)

22

          Petitioner argued that the prosecutor invited the jury to use the police officers' comments

23 about petitioner's mental state as evidence that petitioner was mentally competent and

24 manipulative (Aug. RT 60-61, 132) even though the court had limited such evidence to the jury's

25 understanding of the officers' actions. (6RT 1032-1033.)

26

27

Petitioner respectfully asks this Court to find that the issue is rationally debatable and merits consideration on appeal.

## CONCLUSION

Petitioner respectfully suggests that all of his issues "are debatable among jurists of reason, that a court could resolve the issues [in a different manner], or that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, *supra*, 220 F.3d 1022, 1024-25,. Petitioner accordingly requests that this Court grant a Certificate of Appealability with respect to all of his issues.

March 13, 2008                              Respectfully submitted,

                                           Maureen L. Fox

                                           Attorney for Gregory Williams, Petitioner

## CERTIFICATION OF SERVICE

WILLIAMS v. HOREL                                No. C 07-04269 TEH

I, Maureen L. Fox, certify that on the date set forth below, I served the accompanying REQUEST FOR CERTIFICATE OF APPEALABILITY upon all parties by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Gatos, California, addressed as follows:

Dorian Jung
Deputy Attorney General
455 Golden Gate Ave, Ste 11000
San Francisco, CA 94102-3664
ATTORNEY FOR RESPONDENT

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 13, 2007, at Los Gatos, California.


Maureen L. Fox